UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA,<br><br>    Defendant. | Case No. 20-cv-06015-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

Plaintiff Chris Langer filed this action on August 26, 2020, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.* and the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53, against Defendant Pep Boys Manny Moe & Jack of California ("Pep Boys"). [Docket No. 5.] Plaintiff filed an amended complaint on November 12, 2020. [Docket No. 17 ("FAC").] Pep Boys moves to dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Docket No. 20 ("Mot."), 22 ("Reply").] Langer opposes. [Docket No. 21 ("Opp.").] This matter is suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b).

For the reasons stated below, the motion is granted.

**I.     BACKGROUND**

The following facts are alleged in the complaint and taken from the evidence submitted in support of this motion. Langer suffers substantial and permanent partial hearing loss. FAC ¶¶ 1, 10. He uses a variety of assistive devices, including hearing aids and headphones, but he still does not receive "complete aural communication." *Id.* ¶ 1. Thus, he relies on subtitles and closed captioning while watching videos. *Id.* ¶¶ 1, 11.

Pep Boys is an "automotive aftermarket retail and services chain." [Docket No. 20-1, Declaration of Gregory J. Russ ("Russ Decl.") ¶ 5.] It sells tires and auto parts, repairs vehicles, and provides expert advice. *Id.* Pep Boys own and operate the Pep Boys website, which is available at https://www.pepboys.com. FAC ¶ 4. It also operates physical locations in California. *Id.* ¶ 12.

Pep Boys offers videos on its website for various purposes, such as providing information and inducing customers to purchase its products. FAC ¶ 13. Langer alleges that he was a prospective customer seeking to access Pep Boy's goods and services. *Id.* ¶ 14. He visited Pep Boys' website in August 2020 to "confirm the business was open and look for information about the company and its products." *Id.* ¶ 15. When he tried to view video content on the Website, he found that the videos did not have subtitles, which made him unable to fully understand the contents of the videos. *Id.* ¶ 16. One such video was titled "Need help making an appointment." *Id.* ¶ 17. Langer alleges that he was deterred from further use of the website due to the lack of auxiliary aids and that he was therefore denied the full use and enjoyment of Pep Boys facilities, goods, and services. *Id.* ¶¶ 18, 19.

Langer alleges that Pep Boys' failure to provide subtitles on its video content constitutes a violation of the ADA and California's Unruh Act, Cal. Civ. Code § 51-53.

## II. LEGAL STANDARDS FOR MOTIONS TO DISMISS

### A. Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge asserts that subject matter jurisdiction does not

exist, independent of what is stated in the complaint. *White*, 227 F.3d at 1242. In contrast with a facial challenge, a factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *Id*. (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the non-moving party must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**B.     Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay*

3

*Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

Pep Boys moves to dismiss the FAC on several grounds, including that (1) Langer's ADA claim is moot because the alleged violations have been remedied; (2) Langer lacks standing under the ADA because he has not alleged that he had a credible intent to seek goods or services at a Pep Boys physical location or that he has been deterred from doing so; (3) Langer fails to state an ADA claim because he does not allege that he was impeded from accessing goods or services at a physical location; and (4) the court should decline to exercise supplemental jurisdiction over Langer's Unruh Act claim.

#### A. Legal Framework for Website Accessibility

Title III of the ADA prohibits discrimination "on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To succeed on a Title III claim, a plaintiff must establish "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).

The Ninth Circuit has held that the ADA applies to websites run by public accommodations such as restaurants because they connect customers to the services provided by the physical locations. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019). However, the ADA does not specifically describe which features are required to make a website accessible, and the

1  Department of Justice ("DOJ") has not yet issued guidelines for website accessibility. Instead, the
2  regulations broadly require public accommodations to "furnish appropriate auxiliary aids and
3  services where necessary to ensure effective communication with individuals with disabilities." 28
4  C.F.R. § 36.303(c)(1). "[A]uxiliary aids and services" include "closed caption decoders; open and
5  closed captioning, including real-time captioning; . . . or other effective methods of making aurally
6  delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. §
7  36.303(b)(1). DOJ regulations implementing the ADA are entitled to deference. *Bragdon v. Abbott*,
8  524 U.S. 624, 646 (1998).

The World Wide Web Consortium ("W3C") is a private organization that develops website standards. W3C's Web Accessibility Initiative publishes Web Content Accessibility Guidelines ("WCAG"), which are "private industry standards for website accessibility developed by technology and accessibility experts." *Robles*, 913 F.3d at 902 n. 1; *see also* Web Accessibility Initiative, *Web Content Accessibility Guidelines (WCAG) Overview*, https://www.w3.org/WAI/standards-guidelines/wcag (last visited January 13, 2021). Though WCAG are "private, unenforceable guidelines," *Robles*, 913 F.3d at 907, they "have been widely adopted, including by federal agencies, which conform their public-facing electronic content to" WCAG standards. *Id.* at 902 n. 1. WCAG 2.1 is the most recent version of the guidelines.

**B.    Mootness**

Article III of the Constitution limits federal subject matter jurisdiction to "cases" and "controversies." U.S. Const. Art. III. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Pep Boys asserts that, after Langer filed the complaint in this case, it launched an "entirely new website" that is fully compliant with WCAG 2.0 AA standards. [Docket No. 20-2, Declaration of Adam Huber ("Huber Decl.") ¶¶ 7-8.] Adam Huber, Pep Boys' Senior Manager of Digital Operations, testifies that the only specific video Langer alleged lacked closed captioning is no longer on the Pep Boys' website. *Id.* ¶¶ 9-10. He avers that all videos on the website now have closed captioning. *Id.* ¶ 12. Huber represents that Pep Boys is "committed to continuing to keep its website up to date and compliant with all applicable WCAG standards to make the website as accessible to all as possible." *Id.* ¶ 13. Pep Boys argues that because the alleged barrier has been remedied, Langer's claim is now moot. Langer does not dispute that the specific video named in the complaint no longer exists on the Website. Instead, he argues that changes on a website are not permanent and "[a] violation could happen in a moment when Pep Boys uploads new conduct." Opp. at 6.

In the ADA context, "a defendant's voluntary removal of alleged barriers prior to trial may render a plaintiff's ADA claim moot." *Johnson v. Starbucks Corp.*, Case No. 16-cv-00724-DMR, 2018 WL 5099283, at *4 (N.D. Cal. Oct. 17, 2018) (citing *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011)); *see also Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006). However, courts have been more reluctant to find that an ADA plaintiff's claims have been mooted where the alleged barriers are not structural in nature, since nonstructural barriers (such as policy changes or features on a website) are more likely to reoccur. *See, e.g.*, *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) (rejecting mootness finding where the defendant's policy change "could be easily abandoned or altered in the future"); *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1193 (N.D. Cal. 2007) ("[T]he continuous addition of new pages to Target.com argues against a mootness finding."); *Johnson v. SSR Grp., Inc.*, Case No. 15-cv-5094-MEJ, 2016 WL 3669994, at *4 (N.D. Cal. July 11, 2016) ("While laudable, these voluntary remediation efforts are not structural in nature, and could easily reoccur despite Defendant's best intentions."); *Brooke v. A-Ventures, LLC*, 2017 WL 5624941, at *3 (D. Ariz. Nov. 22, 2017) ("A change to a website is akin to a change in policy, which courts have found are not sufficient to meet the stringent standard for proving a case has been mooted by a defendant's voluntary conduct . . . ."); *Langer v. Kaimana LLC*, 2016 WL 7029151, at *2 (C.D. Cal. Dec. 1, 2016) ("Unlike ADA cases involving post-lawsuit

1 structural alterations, which would require defendants to make physical alterations to a non-ADA
2 compliant property, the policy at issue here simply requires Defendants' inaction."); *Diaz v. Kroger*
3 *Co.*, 2019 WL 2357531, at *4 (S.D.N.Y. June 4, 2019) (agreeing that "alleged violations are more
4 likely to reoccur in the case of websites").

5 Those cases are persuasive here. The Supreme Court has carved out an exception to
6 mootness for "acts that are capable of repetition, yet evading review." *Friends of the Earth, Inc.*,
7 528 U.S. at 170. In the case of websites lacking closed captioning on videos, a defendant could
8 easily remove any particular video immediately after a lawsuit is filed in order to moot the plaintiff's
9 claim. The same defendant could also continue to upload such videos with impunity or fail to
10 implement adequate safeguards to prevent future violations. This is not similar to the multiple cases
11 that have found mootness where the alleged barriers are structural in nature. *See Zaldivar v. City of*
12 *San Diego*, 2016 WL 5118534, at *10 (S.D. Cal. Sept. 21, 2016) ("Courts have held that where
13 structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could
14 not reasonably be expected to occur in the future since structural modification undo the offending
15 conduct.") (citing cases). Physical alterations by nature are more permanent and it is far less likely
16 that defendants could immediately reconstruct the barriers once the claim has been dismissed. Thus,
17 Pep Boys' assurances of future compliance are less persuasive in this case.

18 Pep Boys argues that it would be unjust to find that "ADA litigation involving websites
19 could never be moot," since "**any** website might someday be updated to include some feature that
20 does not comply with every nut and bolt of the third party WCAG guidelines." Reply at 3 (emphasis
21 in original). There is some caselaw supporting Pep Boys' position that ADA defendants should be
22 able, in some cases, to show that an ADA violation with respect to a website has been mooted. *See*
23 *Diaz*, 2019 WL 2357531, at *4 ("[I]t cannot be said that an ADA claim involving a website can
24 never be mooted, solely because of the technological characteristics of websites.").

25 When considering whether a violation is likely to reoccur, a court should consider "the bona
26 fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases,
27 the character of the past violations." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).
28 Here, Huber testifies that Pep Boys had been developing an updated website for eighteen months

7

prior to the beginning of this litigation. Huber Decl. ¶ 8. He also states that, prior to Langer's alleged visit to the website in August 2020, Pep Boys "undertook extensive efforts to ensure its web site complies with the [WCAG standards]," including by monitoring video for closed captioning. *Id.* ¶ 7. He avers that both the new website (which went live in September 2020) and the prior website (presumably the one Langer visited) were and are WCAG compliant. *Id.* ¶ 8. Pep Boys assert that this evidence establishes that it has a good faith intent to comply with the ADA and WCAG in the future, thus showing that another violation is unlikely to occur.

It is not necessary to find that ADA claims based on website accessibility can never be mooted. However, in this particular case, Huber's declaration lacks some key information. Specifically, he testifies that the previous website was WCAG compliant and yet Pep Boys concedes that the video Langer watched on the old website did not have closed captioning. Huber does not explain whether uploading that video was a one-time lapse in an otherwise compliant policy and if so, why Pep Boys failed to identify it. Thus, it is not clear that Pep Boys' attempts at compliance have been effective. Further, Huber does not say whether or how many other videos lacked closed captioning prior to September 2020, so there is no evidence regarding Pep Boys' history of violations or lack thereof. In addition, Pep Boys does not present argument or evidence regarding the applicable WCAG standards, such as a declaration from an ADA consultant with expertise in WCAG standards. *Cf. Alcazar v. Bubba Gump Shrimp Co. Restaurants*, Case No. 20-CV-02771-DMR, 2020 WL 4601364, at *3 (N.D. Cal. Aug. 11, 2020) (defendant presented an expert declaration regarding WCAG compliance). It is unclear what specialized knowledge Huber has with respect to WCAG compliance, particularly since Pep Boys does not explain the relevant WCAG standards. Finally, a website's compliance with WCAG standards is "informative to, but not dispositive of, whether it violates the ADA." *Id.* at *4.

Based on these considerations, the court finds that Pep Boys has not met its "heavy burden of proving that the challenged conduct cannot reasonably be expected to recur." *White v. Lee*, 227 F.3d 1214, 1244 (9th Cir. 2000).

**C. Standing**

Injunctive relief is the only remedy available for ADA claims. Standing for injunctive relief requires a plaintiff to establish a "real and immediate threat of repeated injury." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). Ninth Circuit caselaw establishes that an ADA plaintiff may establish standing "either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011).

Pep Boys argues that Langer lacks standing to pursue injunctive relief because he has not adequately alleged that he was either deterred from a place of public accommodation or demonstrated an injury-in-fact coupled with an intent to return to the facility. Specifically, Pep Boys contends that Langer "does not allege that he has ever been to a Pep Boys' facility, that he intends to visit Pep Boys, or why he would wish to visit one." Mot. at 10. Langer responds that his allegations are adequate to plead standing because he alleged that he visited the website on "multiple attempts" and is deterred from doing so again until the website is accessible. Opp. at 15. He argues that it is not required for him to have experienced an injury *at* a physical Pep Boys' location, only that he "wished to access Defendant's goods and services" but could not. *See* Opp. at 11-12.

On their own, websites are not places of public accommodation. *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (holding that the ADA covers "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services"). *Robles*, above, explains that websites and applications are covered by the ADA to the extent that there is a "nexus" between the website and the physical location. *See Robles*, 913 F.3d at 905; *see also Farr v. Hobby Lobby Stores, Inc.*, 2020 WL 3978078, at *2 (C.D. Cal. Apr. 29, 2020) ("[S]o long as there is a 'nexus' between a defendant's physical locations and its website or mobile app, web-based discriminatory barriers that impede access to goods and services can give rise to an injury under the ADA."). For example, a website violates the ADA where it does not provide auxiliary aids to order products for delivery, as in *Robles*, or where the web-based barriers prevent the plaintiff from locating a physical store, as in *Farr*. *See also Williams v. Amazon.com Inc.*, 2020 WL 5909060, at

9

\*1 (E.D. Cal. Oct. 6, 2020) (plaintiff adequately alleged standing when he claimed he had been "deterred from visiting defendant's physical stores because he is unable to use defendant's website to locate the stores and obtain their hours of operation"); *Haggar v. Ashley Furniture Indus., Inc.*, 2019 WL 8886026, at \*3 (C.D. Cal. Dec. 12, 2019) ("Plaintiffs allege they tried to use Defendant's website to locate physical stores, and order furniture and other products available at Defendant's physical locations."). By contrast, a plaintiff who fails to allege any connection between the website barriers and a physical location does not have an ADA claim. *See Thurston v. FCA US LLC*, 2018 WL 700939, at \*4 (C.D. Cal. Jan. 26, 2018) ("Plaintiff fails to allege that she has any plans to return to the fiatusa.com website to locate dealerships or for any other reason, or that she intends to locate and travel to a dealership in the future."); *Strojnik v. Kapalua Land Co. LTD*, 2019 WL 4685412, at \*6 (D. Haw. Aug. 26, 2019), *report and recommendation adopted sub nom. Strojnik v. Kapalua Land Co. Ltd.*, 2019 WL 4684450 (D. Haw. Sept. 25, 2019), *aff'd*, 801 F. App'x 531 (9th Cir. 2020) (finding that an ADA plaintiff failed to state a claim because he did not allege "any facts establishing that the services the Website denied him has any nexus to the actual Property").

In this case, Langer alleges that he "visited the Website in August 2020 to confirm that the business was open and look for information about the company and its products." FAC ¶ 15. He alleges he was "denied the full use and enjoyment of the facilities, goods and services offered by Defendants" as a result. *Id.* ¶ 19. According to Langer, he has been "deterred from returning to the website as a result" of this experience. *Id.* ¶ 22. He avers that he "will return to the Website to avail himself of its goods and/or services" once it has been made accessible. *Id.* ¶ 25. However, he does not explain how the alleged violations have a nexus to Pep Boys' physical locations. For example, he does not allege that he intended to visit a Pep Boys' location and could not because the website was inaccessible. He also does not represent that he was trying to use the website to order goods or services from Pep Boys' physical location. Instead, he merely suggests that the website's videos are themselves a service that he was prevented from accessing. But the caselaw cited above makes clear that websites (and the services offered on them) are not public accommodations absent a nexus to a physical location. Therefore, without more, Langer's allegations that he had difficulty watching a video on Pep Boys' website is not sufficient to allege injury under the ADA.

## IV. CONCLUSION

Because Langer has failed to allege standing under the ADA, the court grants Pep Boys' motion to dismiss. However, it does not appear that amendment would be futile, since Langer could add allegations that he attempted to access services connected with a physical Pep Boys location and could not. Accordingly, Langer is granted leave to amend the complaint to address the deficiencies identified in this order. Any amended complaint is due no later than January 29, 2021.

**IT IS SO ORDERED.**

Dated: January 15, 2021



Donna M. Ryu
United States Magistrate Judge